UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOEL RAY SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>BARBARA ROBERTS, et al.,<br><br>    Defendants. | Case No. 16-cv-04764-WHO (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Dkt. No. 16 |

## INTRODUCTION

Plaintiff Noel Ray Smith claims in this federal civil rights action that his jailors violated his rights under the Americans With Disabilities Act and the Rehabilitation Act of 1973 when they fired him from his prison job at the textile mill and denied his request for reinstatement.[1] Defendants move for summary judgment. (Dkt. No. 16.) Smith failed to administratively exhaust his claims against three of the defendants and has failed to show a genuine dispute of material fact on the merits because his medical limitations, which he brought to the attention of his supervisor, precluded him from continuing work in the sewing room of the textile mill. I will GRANT defendants' motion for summary judgment.

---

[1] Defendants provided Smith with the required warnings under *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc). (Dkt. No. 16-9.)

# FACTUAL BACKGROUND

In 2015, Smith, a state prisoner, was fired from his prison job at the textile mill at CTF-Soledad. Smith alleges that he was impermissibly fired because of his epileptic seizure disorder. (Am. Compl. at 3.) He also asserts that defendants failed to accommodate his disability, such as by reassigning him to a job as a porter or in the textile mill's shipping department. (*Id.* at 5.)

Defendants dispute that he was fired because of his alleged disability. In their view, his termination was a response to his doctor's September 2014 instructions to "[a]void working with machinery" and another doctor's October 2014 instructions to "avoid . . . sharp object machinery." (Am. Compl., Dkt. No. 6 at 14 and 15.) According to defendants, all textile workers "are required to be able to use a sewing machine, scissors, and seam rippers to sew, trim, and tear garments down whenever factory needs dictate." (Mot. for Summ. J. ("MSJ") at 3; Voong Decl., Ex. D at 2.) To defendants, all means everyone; even those who work as porters or clerks, or in shipping, must meet this requirement. (*Id.*)

Smith counters that the CDCR "has never . . . considered sewing machines to be 'dangerous machinery.'" (Pl.'s Opp. to MSJ ("Opp.") at 3.) He also asserts that the "C.D.C.R. medical department has never allowed me to work on sewing machines while at the same time restricting me from using sissors [*sic*], snipps [*sic*], or seam rippers by classifying them as 'sharp objects.'" (*Id.*) As support for his position, Smith has appended a 2016 chrono from a prison doctor. It states that Smith "is allowed to work at sewing machine in [the textile mill] since it is not considered to be a [*sic*] hazardous machinery." (*Id.*, Ex. F.) The chrono also states, however, that Smith is restricted from jobs that involve, among other tasks, working with "hazardous machinery" or "sharp objects." (*Id.*)

Smith exhausted administrative review of one grievance. It was denied at every level. He then brought the present suit against defendants for violating his rights under the Americans With Disabilities Act ("ADA") and the Rehabilitation Act of 1973. He names as defendants Barbara Roberts, his supervisor at the textile factory; William Anderson,

1  who denied Smith's inmate grievance at the second level of review; Gregg Sheffield, who signed the second level response; and Scott Kernan, Secretary of the CDCR.

Defendants move for summary judgment on grounds that Smith (i) failed to administratively exhaust his claims prior to filing his suit against Anderson, Sheffield and Kernan and (ii) has not shown a genuine dispute of material fact that defendants violated his disability rights because of the medical limitations issued by his doctors.

**STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with

3

reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

**DISCUSSION**

**I.  Exhaustion**

Defendant moves for summary judgment on grounds that Smith failed to exhaust his administrative remedies regarding defendants Anderson, Sheffield, and Kernan before filing suit.[2]

Prisoners must properly exhaust their administrative remedies properly before filing suit in federal court, as mandated by the Prison Litigation Reform Act ("PLRA"). *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90.

The Supreme Court recently reaffirmed that the PLRA's exhaustion requirement is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1856-58 (2016). A prisoner is required to exhaust the grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Id.* at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2006)). Unless the administrative process is not available, "the PLRA's text suggests no limits on an inmate's obligation to exhaust — irrespective of any 'special circumstances.'" *Id.* at 1856. "[T]hat mandatory language means a court may not excuse a failure to exhaust." *Id.*

---

[2] Title II provides redress for discrimination by a "public entity," a term which does not include individuals. *See* 42 U.S.C. §§ 12131(1), 12132. In light of this, it may seem unnecessary to determine whether Smith exhausted his administrative remedies against these individual defendants. However, the Court sees value in addressing the issue of exhaustion because it disposes of any individual claims Smith may bring against these defendants; and it pares the case down to the dispute that gave rise to this action, that is, Roberts's firing of Smith.

4

The State of California provides its prisoners the right to appeal administratively "any policy, decision, action, condition or omission by the [CDCR] or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 CCR § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (i) informal review, submitted on a CDC 602 inmate appeal form; (ii) first formal level appeal, to an institution appeals coordinator; (iii) second formal level appeal, to the institution warden; and (iv) third formal level appeal, to the Director of the CDCR. *See id.* § 3084.7; *Brodheim v. Cry*, 584 F.3d 1262, 1264-65 (9th Cir. 2009). A prisoner exhausts the appeal process when he completes the third level of review. 15 CCR § 3084.1(b); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010).

To initiate an appeal, also referred to as a grievance, the inmate or parolee must submit a CDCR Form 602 describing the issue to be appealed to the appeals coordinator's office at the institution for receipt and processing. *Id.* § 3084.2(a)-(c). As of 2011, the appeal must name "all staff member(s) involved" and "describe their involvement in the issue." *Id.* § 3084.2(a)(3).

Here, Smith submitted one 602 form related to his termination (CTF-16-00154). (MSJ, Voong Decl., Ex. D at 3.) In it, he complained that his supervisor B. Roberts impermissibly fired him after reviewing his doctor's recommendation that he stay away from sharp objects. (*Id.*) There is no mention in the 602 form of defendants Anderson, Sheffield, or Kernan, nor any description of their actions. (*Id.*)

The grievance was denied at the second level by defendants Anderson and Sheffield. (*Id.* at 7-9.) Smith, dissatisfied with the denial, appealed to the third level. (*Id.* at 4.) In his statement of reasons for dissatisfaction, Smith complained that Anderson's decision was "contrary to C.D.C.R. policy under the Armstrong Remedial plan." (*Id.*)

The grievance was denied at the third level by Voong, Chief of the Office of Appeals. (*Id.* at 1-2.) He found that Smith's epileptic disorder made it unsafe for him to work in the textile factory. (*Id.*) Voong stated that all textile workers "are required to be

able to use a sewing machine, scissors, and seam rippers to sew, trim, and tear garments down whenever factory needs dictate." (*Id.* at 2.) All means all — even those who work as porters or clerks, or in shipping, must meet this requirement. (*Id.*)

I must grant summary judgment in favor of defendants Anderson, Sheffield and Kernan because they were never named, nor were their actions described, in the 602 form as required by 15 CCR § 3084(a)(3). Smith named only one defendant, B. Roberts, in the sole relevant CDCR Form 602. These undisputed facts mandate dismissal of defendants Anderson, Sheffield and Kernan.

Smith counters that: (i) Anderson, Sheffield, and Kernan "made themselves a party" to the alleged violation because they failed to act after being put on notice by his grievance; (ii) there is no regulatory requirement that he separately name or grieve these defendants' actions; and (iii) case law supports his assertion that there is no requirement that he name the defendants in his 602 form, or that he should have filed separate grievances about their actions. (Opp. at 4-5.) These arguments lack merit for three reasons.

First, it is immaterial to the question of exhaustion whether the defendants made themselves a party to the action. The regulations required Smith to name them in his 602 form and describe their actions, and he did not do so. "[I]t is the prison's requirements . . . that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Second, there is a regulatory requirement (15 CCR § 3084.2(a)(3)) that Smith name the defendants and describe their actions. Third, the case law Smith cites was issued before 2011, that is, before the naming requirement became operative. *See* 15 CCR § 3084.2 (2011). Subsequent case law supports this Court's conclusion. *See Martinez v. Swift*, No. C 13-3973 RS (PR), 2015 WL 1349525, at *2 (N.D. 2015) (failure to name in administrative appeal the prison guard who reviewed grievance constituted a failure to exhaust); *Panah v. Department of Corrections and Rehabilitation*, No. 14-cv-00166-BLF, 2015 WL 1263494, at *9-10 (N.D. Cal. 2015) (failure to name warden in prison grievance constituted a failure to exhaust, despite plaintiff's allegations that warden condoned or permitted the violation).

6

Accordingly, defendants' motion for summary judgment in favor of Anderson, Sheffield, and Kernan is GRANTED.

**II.     ADA and Rehabilitation Act Claims**

The substance of Smith's claim is that Roberts violated his rights under the ADA and the Rehabilitation Act of 1973 when she terminated him.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, a plaintiff must allege four elements: (i) he is an individual with a disability; (ii) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (iii) he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (iv) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

Section 505 of the Rehabilitation Act of 1973, as amended and codified in 29 U.S.C. § 794(a), provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." The Rehabilitation Act is applicable to state prisons receiving federal financial assistance. *See Armstrong v. Wilson*, 124 F.3d 1019, 1022-23 (9th Cir. 1997).

The elements of a claim under the Rehabilitation Act are that: (i) the plaintiff is a handicapped person under the Act; (ii) he is otherwise qualified; (iii) the relevant program receives federal financial assistance; and (iv) the defendants impermissibly discriminated against him on the basis of the handicap. *See Bonner v. Lewis*, 857 F.2d 559, 562-63 (9th Cir. 1988).

In the prison context, both Title II of the ADA and Section 504 of the Rehabilitation Act must be applied with consideration to legitimate penological interests. *See Armstrong v. Wilson*, 942 F. Supp. 1252, 1259 (N.D. Cal. 1996) (citing *Gates v. Rowland*, 39 F.3d 1439, 1447 (9th Cir. 1994)). In other words, "to prevail on a claim that their statutory rights have been violated, inmates must show that the challenged prison policy or regulation is unreasonable." *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008) (citing *Gates*, 39 F.3d at 1447). "In ADA cases, the plaintiff bears the burden of establishing the elements of the prima facie case, including — if needed — 'the existence of a reasonable accommodation' that would enable him to participate in the program, service, or activity at issue." *Pierce*, 526 F.3d at 1217 (quoting *Zukle v. Regents of University of California*, 166 F.3d 1041, 1046 (9th Cir. 1999)).

Furthermore, "[s]ection 12131 [of the ADA], which defines the class of individuals entitled to § 12132's protection, includes a test that evaluates the risk posed by an individual." *Bay Area Addiction Research and Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 735 (9th Cir. 1999). "Specifically, an individual who poses a significant risk to the health or safety of others that cannot be ameliorated by means of a reasonable modification is not a qualified individual under § 12131." *Id.*

Essentially the same showing is required to state a cause of action under section 504 of the Rehabilitation Act and under the ADA. *See Olmstead v. Zimring*, 527 U.S. 581, 589-91 (1999); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). Because the parties have not indicated any relevant difference between the ADA and the Rehabilitation Act analyses for the claims, the claims will be addressed together, as they frequently are. *See Duvall*, 260 F.3d at 1135.

I assume without deciding that Smith's epilepsy qualifies as a disability under these statutes. There is no question that Smith had been working successfully in the textile mill before he brought his medical condition to his supervisor's attention, and that he wants to return to that position. However, Smith has not shown a genuine issue of disputed fact that (i) he was otherwise qualified to participate in or receive the benefit of the public entity's

8

services, programs, or activities, a showing required by both statutes, (ii) he did not pose a risk to the health and safety of others, and (iii) the prison policy was unreasonable.

Smith was not otherwise qualified to participate in the job program. The medical chronos in September and October 2014 state that Smith should not work with sharp objects or machinery.[3] (Am. Compl., Dkt. No. 6 at 14 and 15.) All employees (including porters and shippers) of the textile mill have to be able to work with sharp objects, such as scissors and seam rippers. (MSJ at 3; Voong Decl., Ex. D at 2.) The inevitable conclusion is that Smith was not otherwise qualified to work at the textile mill.

Second, Smith has not shown a genuine dispute of material fact that he does not pose a significant risk to the health and safety of himself or others. The undisputed record shows that jobs in the textile mill require persons to be around and use sharp objects and machinery. Smith's epileptic disorder puts him at risk of significant injury to himself and others, should he have a seizure while handling or simply being around such tools and machines, or have a seizure near to those handling sharp tools or working with machinery. His doctors agree, as evidenced by the 2014 and 2016 chronos.

Two cases are instructive here, though they arise in the context of Title I of the ADA, which relates to employment. In *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 84-86 (2002), the Court held that Title I is not violated by regulations which permit employers to refuse to hire an individual because his disability would pose a direct threat to his own health while on the job, even if he is willing to take the risk. Smith would take the risk, but defendants are not required to let him do so. In *Hutton v. Elf Atochem North America*, 273 F.3d 884, 892 (9th Cir. 2001), an employee who had a blackout during a diabetic episode was not a "qualified individual" because his condition created a risk of significant harm to himself and others in a chemical production plant. There is no evidence that Smith has had an epileptic seizure on the job, but the medical limitations are

---

[3] The Court notes that the second chrono was issued in 2016, well after the 2015 events at issue. While it clearly cannot have influenced defendants' actions in 2015, it reaffirms the validity of the warnings given in the 2014 chronos. The chronos are described in page 2 of this order.

9

explicit in warning that he should not work with sharp objects or machinery.

Third, Smith also has not shown a genuine dispute of material fact that his termination was unreasonable in light of the dangers posed by his condition. Smith's disability poses a risk to the health and safety of himself and others. A policy that protects workers who should not be around and work with sharp objects and machinery, according to their physicians, is not unreasonable.

Accordingly, defendants' motion for summary judgment on the merits is GRANTED because there is no material fact in dispute. Smith's rights under the ADA and the Rehabilitation Act of 1973 have not been violated.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. No. 16) is GRANTED. The Clerk shall terminate Dkt. No. 16, enter judgment in favor of defendants, and close the file.

**IT IS SO ORDERED.**

**Dated:** September 25, 2017



WILLIAM H. ORRICK
United States District Judge